# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 16, 2003 Session

## STATE OF TENNESSEE v. BENJAMIN DAMRON

**Appeal from the Circuit Court for Coffee County**
**No. 29542     John W. Rollins, Judge**

---

**No. M2003-00588-CCA-R9-CO - Filed December 29, 2003**

---

DAVID G. HAYES, J., dissenting

I am unable to join with my colleagues in concluding that the defendant's inculpatory statement must be suppressed. The trial court ruled that the defendant's statement was inadmissible upon grounds that there was no "clear understanding [between the district attorney and defense counsel] about exactly what was going to transpire." The majority opines, on the other hand, that the questions which followed the polygraph examination were "one event and, therefore, part of the polygraph examination itself."

The proper test, I believe, is whether the defendant's statement under the circumstances was voluntary, "that is, [it] must not [have been] extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *U.S. v. Black Spotted Horse*, 120 F. Supp. 2d 802, 806 (D.S.D. 2000) (holding statements of defendant made during a post-polygraph interview by authorities were admissible) (citing *Bram v. United States*, 168 U.S. 532, 542-43, 18 S. Ct. 183, 187 (1897)). In the absence of deception, coercion, or overreaching conduct by the State, I find the defendant's incriminatory statement voluntary and, thus, admissible.

As noted by the majority, prior to submitting to the polygraph examination, the defendant waived his Fifth Amendment right to remain silent. In addition, the defendant signed a document entitled "Consent to Polygraph Examination," which provided in pertinent part:

I understand that I am voluntarily consenting to this polygraph examination; that I have the right to refuse to take the examination; that I have the right to refuse to answer any questions; that I have the right to consult with an attorney before taking the examination; that any statements I make may be used against me in court; and that I may terminate the examination at any time. All test questions will be reviewed with me before the examination.

I understand that after review of the examination, I will be advised of the results and, if necessary allowed to explain any questionable responses which were evident.

I find nothing confusing as to what the defendant was told would happen and what, in fact, happened. As explained in the document, upon completion of the polygraph examination, the defendant was disconnected from the machine and advised of the results, which indicated deception. Afterwards, the defendant explained to the polygraph examiner that "[the victim] was not forced." I find nothing in the examiner's report, which is the only proof before us, suggesting that this statement was anything other than voluntary. "Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable." *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S. Ct. 1285, 1291 (1985). "Very few people give incriminating statements in the absence of official action of some kind." *Schneckloth v. Bustamonte*, 412 U. S. 218, 224, 93 S. Ct. 2041, 2046 (1973). Moreover, as a general rule, courts have held that the mere fact that the accused confessed to a particular crime in anticipation of or following a polygraph examination does not *per se* render the confession inadmissible in evidence. *E.g., Wyrick v. Fields*, 459 U.S. 42, 47-49, 103 S. Ct. 394, 396-97 (1982) (voluntary confession given during post-polygraph interview was admissible and did not violate the defendant's fifth amendment right to counsel); *Rupe v. Wood*, 93 F.3d 1434, 1444 (9th Cir. 1996) (the defendant's will was not overborne by the polygraph examiner so as to render the defendant's subsequent confession involuntary, where, after the defendant voluntarily submitted to polygraph, the examiner told the defendant that he appeared to have failed the exam and that the defendant would be better off if he cooperated with the examiner rather that having the examiner report the examination results to investigating police officers); *Barrera v. Young*, 794 F.2d 1264, 1269-72 (7th Cir. 1986) (confession by the defendant in response to questions of the examiner prior to the administration of a third polygraph was not involuntary, where the defendant and his counsel waived the defendant's *Miranda* rights in relation to the test and were aware that questioning by the examiner would precede the actual test); *United States v. Beckwith*, 22 F. Supp. 2d 1270, 1285-86 (D. Utah 1998) (informing the defendant of the results of a polygraph exam does not constitute misconduct or overreaching sufficient to raise an issue of an involuntary confession); *Powell v. Commonwealth*, 944 S.W.2d 1, 3 (Ky. Ct. App. 1997) (where the defendant initiated the contact with the examiner, did not request any restrictions upon questioning, and waived her right to counsel, confession during post-interview phase was admissible); *State v. Morton*, 715 A.2d 228, 261-62 (N.J. 1998) (subjecting the defendant to polygraph tests did not impugn the voluntariness of his confession, where interrogating officers advised the defendant of his right to refuse to take the test, to discontinue the test, and to refuse to answer any question during the test).

For the above reasons, I would permit introduction of the defendant's inculpatory statement.

_____
DAVID G. HAYES, JUDGE